UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| FRANK ESQUIVEL, | ) | C/A No.: 4:15-cv-4114-TMC-TER |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| WARDEN FCI ESTILL, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Frank Esquivel (Petitioner), appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] on October 5, 2015. (Doc. #1). Respondent filed a motion for summary judgment on December 21, 2015, along with a memorandum and exhibits. (Doc. #12). The undersigned issued an order filed December 21, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #13). Petitioner filed a response on February 11, 2016.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party

2

bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel

Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86

(4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.


## B.  ARGUMENT OF PARTIES/ANALYSIS

**Factual and Procedural Background**[2]

Petitioner was sentenced in the United States District Court for the Eastern

District of North Carolina on August 17, 2005, to a term of imprisonment of two

hundred sixty-four months. (Respondent's Exhibit 12-3 at 1-6). The Judgment and

Commitment Order ("J&C") entered in Petitioner's case reflects, under the "Criminal

Monetary Penalties" section, that he "shall pay the total criminal monetary penalties

in accordance with the schedule set forth on Sheet 5, Part B." Id. at 5. Sheet 5, Part B

provides the "Schedule of Payments," which reflects that the payment of the "other

criminal monetary penalties" including the one hundred dollar special assessment

shall be due "immediately" Id. at 6. Further, the J&C notes that "incorporated into this

judgment is the Order of Forfeiture filed on 7/29/05 and Judgment on Forfeiture filed

8/2/05." The first referenced document is a preliminary order of forfeiture which

---

[2]The Court may take judicial notice of the filings in Petitioner's underlying criminal case (Cr. Case No. 5:05-cr-26) out of the Eastern District of North Carolina, Western Division. See generally, Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970); See also Colonial Penn Ins. Co. v. Coil, 887 F. 2d 1236, 1239 (4th Cir. 1989) (federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to matters at issue).

identifies $1,500,000.00 in U.S. currency (whereabouts unknown to the Government), and a parcel of real property. (Doc. #12-12). The second referenced document is a judgment entered pursuant to the preliminary order of forfeiture. against Petitioner in the amount of $1,500,000.00. (Doc. #12-6).

On or about September 29, 2014, Petitioner filed a Motion to Clarify Judgment with the sentencing court in the Eastern District of North Carolina arguing that at the time of the sentence the court stated that "no fine is imposed to give the Defendant an opportunity to support his minor children form prison." (Doc. #12-4). Petitioner alleged that at the time he was sentenced, all of his assets were seized, and he had no other property or money. Id. In the motion, Petitioner asserted that his mother sends him One Hundred dollars a month, which is his only source of money that he uses to pay for hygiene supplies and phone calls to his children and family. Id. Petitioner argued that he had been in the Bureau of Prison's ("BOP") custody since 2005, and it was not until he arrived at FCI Estill that his Judgment of Forfeiture Order was treated as a fine, and the BOP started collecting it through the IFRP. Id. On October 6, 2014, the Sentencing Court filed an order addressing Petitioner's Motion to Clarify Judgment and request to order the BOP to cease taking money out of his account through the IFRP. (Doc. 1-1) The Court ruled as follows:

> To the extent Esquivel is seeking clarification of this
> court's forfeiture orders, the court will go through these

5

> orders. Incorporated into the court's Judgment was the July 29, 2005 Preliminary Order of Forfeiture and the August 2, 2005 Judgment on Forfeiture. See Judgement [DE-38]at 6. The July 29, 2005 Preliminary Order of Forefeiture [DE-34] provides for the forfeiture of $1,500,000.00 in U.S. currency and a substitute asset of real property located at 710 Wakeland Drive, Carner, North Carolina. The August 2, 2005 Judgment on Forfeiture [DE-36] provides that judgment is entered against Esquivel in the amount of $1,500,000.00 and interest shall accrue at the rate of 3.68%.

(Doc. #1-1).

The Sentencing Court did not rule on the request to enter an order directing the BOP to cease taking money out of his account through the IFRP for failure to exhaust administrative remedies. Id.

On September 8, 2015, Petitioner filed a Motion to Compel seeking an order directing the BOP to cease taking money out of his account through the IFRP. (Doc. #12-5). In an order filed September 16, 2015, the sentencing court entered the same paragraph as it had in the Order of October 6, 2014, set out above, with regard to the Forfeiture Orders. Additionally, the Sentencing Court found that Petitioner was correct that the court declined to impose a fine in consideration of the effect such a financial burden would have on his minor children. Nevertheless, the court noted that its "decision not to impose a fine, however, neither negates nor delays the effectiveness of the August 2, 2005 Judgment of Forfeiture." (Doc. #1-1 at 16).

Petitioner acknowledges that he has the following financial obligations: the

special assessment reflected in the J&C and the $ 1,500,00.00 discussed in the preliminary order of forfeiture, which was the amount included in the Judgment entered on August 2, 2005. (Petition). However, Petitioner asserts that the BOP should not be collecting monies from his inmate account towards payment of this judgment in light of the following language included in Petitioner's J&C:

> Special Instructions regarding the payment of criminal monetary penalties:
>
>> The court finds that the defendant may have the ability to pay a fine below the guideline range, however, in consideration of the undue financial burden a fine would place upon the defendant's minor children, no fine is ordered - 18 3572(a)(2). The Court recommends that the BOP closely monitor the defendant's compliance with the child support orders in Wake and Halifax Counties, N.C. (Wake) 3718399CV011005. (Wake) 3718304CVD))4624 and (Halifax) 3708302CVD001269. The Court finds that restitution is not applicable in this case.

Id.

Essentially, Petitioner challenges the execution of his sentence and conditions of confinement relating to the manner in which the Bureau of Prisons ("BOP") is collecting payments towards his financial obligations through his participation in its Inmate Financial Responsibility Program ("IFRP"). In his response in opposition to summary judgment, Petitioner argues that the court's intentions were clear that "a fine would be a burden upon defendant at this time and as such choose not to levy one, the judgment was still imposed for the forfeiture of monies and properties own by

defendant which was accomplished by the USM. . ." (Doc. #20). Petitioner asserts that he is "asking Court to do is to determine the intention of the Courts in sentencing him, Court was explicit about not causing hardship to defendant by adding fines and restitution cost and ten years later of continued incarceration has not improved his outlook financially...." Id. at 4. Petitioner states in his response that he is requesting the court to "terminate the current attempt by the USM to seize untainted non criminal proceeds not related to the judgment forfeiture order. . ." Id.

Respondent filed a motion for summary judgment asserting that Petitioner's challenge to the use of the IFRP to collect a court-imposed forfeiture judgment concerns the execution of his sentence, and therefore is correctly framed as a habeas claim under §2241. Furthermore, Respondent asserts that Petitioner has exhausted his administrative remedies as to the allegations set forth in his current petition.

Respondent submitted the declaration of Anita Cano ("Cano"), an employee of the Department of Justice, BOP, FCI Estill as a Correctional Treatment Specialist (a.k.a. Case Manager). (Doc. #12-9). Cano declares that she is Petitioner's Case Manager and, as part of duties, she sat down with Petitioner to develop a financial plan for him to make scheduled payments toward his court ordered financial obligation under the IFRP. Id. Petitioner had two financial obligations set forth in his J & C, a $100 assessment fee paid on March 10, 2006, and a $1,500,000.00 Judgment

of Forfeiture Order obligation with a balance of $1,479,549.92 after the offset of a piece of personal property that had been previously seized and sold. Id. Petitioner could only afford to make a $25.00 quarterly payment for the first two quarters based on the amount in his trust fund account. Id. Since that time, Petitioner's quarterly payments have increased due to him working and receiving outside funds in his trust fund account. Id. Petitioner voluntarily agreed to pay $94.00 under the IFRP toward his forfeiture obligation. Id. In Petitioner's J&C, the sentencing court recommended that the BOP closely monitor his three child support orders to make sure he complied with payment of such orders. Id. Records indicate that all three child support orders have been closed as of May 2007 and records indicate that he did not pay any child support through the IFRP since his incarceration. Id.

Respondent submitted a copy of Program Statement 5380.08, Inmate Financial Responsibility Program. (Doc. #12-11). Based on the IFRP, the Unit Team first subtracts from the inmate's trust fund account the inmate's minimum payment schedule for his UNICOR or non-UNICOR work assignments when developing the inmate's financial plan. Id at 7. The IFRP states that "The Unit Team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System. Any money

9

remaining after this computation may be considered for IFRP payments." <u>Id</u>. Therefore, the amount of $94.00 is the amount the Unit Team calculated Petitioner should be paying toward his financial obligations, and he agreed. (Doc. #12-9 and #12-10).

Respondent asserts that the refusal by an inmate to comply with the provisions of his financial plan may result in up to ten possible non-punitive sanctions, including limitation of prison earnings, denial of eligibility for community programs, being subject to a more stringent monthly commissary spending limitation, and being assigned the lowest housing status. Respondent argues that Petitioner can either elect to participate in the IFRP and make payments on the Judgment of Forfeiture Order or be subject to consequences of being placed in IFRP refusal status but that court intervention is not required.

Based on the J & C and the Judgment of Forfeiture Order, Petitioner has two financial obligations. On or about March 10, 2006, Petitioner paid the full amount of his Assessment obligation. ( Docs. #12-3, #12-6, #12-7). On or about March 10, 2014, records reflect Petitioner began making payments toward his second obligation, the Money Judgment Forfeiture Order in the amount of $1, 479,549.92. (Doc. #12-8).

The J&C unquestionably incorporates a Judgment in the amount of $1,500,00.00 against Petitioner pursuant to the preliminary Order of Forfeiture.

Although the sentencing Court did not order a fine, the J&C specifically provides that:

> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.

(Doc. #12-3 at 6).

## The BOP's authority to collect judgment

The IFRP set forth in 28 C.F.R. §§ 545.10 and 545.11 provides that participating inmates will make payments toward a payment of a monetary penalty imposed by the court in accordance with a a developed financial responsibility plan. The IFRP is a voluntary work program instituted by the BOP to encourage "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10.[3] The program allows for the development of a financial plan so that inmates may satisfy enumerated obligations, such as fines and other court-ordered obligations, while incarcerated. 28 C.F.R. § 545.11(a). An inmate's refusal to comply with the provisions of his financial plan may result in the loss of some privileges and limitations on participation of some other BOP programs. See 28 C.F.R. § 545.11(d). The IFRP is "voluntary program [designed] to assist [the inmate] in the mechanics of complying with the order of the sentencing court." Summersett v. Baucknecht, 496

---

[3] See also Ware v. Drew, 2010 WL 4237595 * 2 (D.S.C. Sept. 16, 2010), Report and Recommendation adopted, Ware v. Drew, 2010 WL 4237449 (D.S.C. October 21, 2010).

F. Supp. 2d 636, 638 (D.S.C. 2007) (internal quotations omitted).

The Fourth Circuit has held that payment schedules established by the BOP under the IFRP do not constitute an improper delegation of authority by the courts. See United States v. Watkins, 161 Fed. Appx. 337 (4th Cir.2006) (unpublished). The BOP has discretion to collect monetary payments through the IFRP. Therefore, the BOP is properly using the IFRP as an avenue to collect Petitioner's restitution, just as it would any other debt owed by him. See Coleman v. Brooks, 133 Fed. Appx. 51 (4th Cir. May 24, 2005) (unpublished).

Petitioner has not demonstrated any deficiency in the money forfeiture judgment, and therefore cannot identify any valid challenge to the BOP's authority to collect the judgment pursuant to the IRFP. See Harmon v. Cruz, 2014 WL 2990481 (D.S.C. June 26, 2014).[4] Therefore, it is recommended that Respondent's motion for summary judgment be granted and the petition dismissed.

## CONCLUSION

Based on the above, it is recommended that Respondent's motion for summary judgment (doc. #12) be granted and the petition dismissed.

---

[4] To the extent Petitioner is challenging the merits of the orders issued by the sentencing court, a §2241 petition is not the proper vehicle.

12

Respectfully submitted,


s/Thomas E. Rogers, III

April 29, 2016          Thomas E. Rogers, III
Florence, South Carolina    United States Magistrate Judge


**The parties' attention is directed to the important information on the attached notice.**